**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| Kemi Ade, *on behalf of herself and all others similarly situated,*<br><br>Plaintiff,<br>v.<br><br>Hard Eight Nutrition LLC d/b/a BulkSupplements.com,<br><br>Defendant. | Civil Action No.: ______<br><br>**COMPLAINT** |

For this Class Action Complaint, Plaintiff Kemi Ade, by undersigned counsel, states as follows:

## INTRODUCTION

1. Defendant Hard Eight Nutrition LLC d/b/a BulkSupplements.com ("Defendant" or "Bulk") formulates, manufactures, advertises and sells "Magnesium Glycinate Powder" dietary supplement powder (the "Magnesium Supplements" or the "Supplements") throughout the United States that purport to contain 400 mg of Magnesium "as Magnesium Glycinate" per one serving comprised of 2,200 milligrams of powder. It prominently displays the magnesium content of the Supplements as well as the number of servings contained in the product on the product's label.

2. However, it is impossible to obtain 400 mg of magnesium derived from magnesium glycinate in one 2,200 milligram serving of powder. Magnesium glycinate simply possesses far too low a concentration of magnesium to do so.

3. Accordingly, the Magnesium Supplements do not contain 400 mg of magnesium as magnesium glycinate per serving and thus do not contain the quantity of magnesium that is

advertised, and thus warranted, on the product's label. Instead, the Supplements contain significantly less magnesium as magnesium glycinate than what is claimed and displayed or zero magnesium derived from magnesium glycinate.

4. In misstating the actual magnesium content of the Supplements, Bulk violates federal and state law and regulations designed to prevent deceptive supplement labeling and breaches the express warranty created by its labeling. Defendant's prominent misrepresentations regarding its Magnesium Supplements form a pattern of unlawful and unfair business practices that visits harm on the consuming public.

## PARTIES

5. Plaintiff Kemi Ade ("Plaintiff") is and at all times relevant hereto was an adult individual residing in Columbia, Maryland. Plaintiff has purchased Bulk's Magnesium Supplements within the last four years including on February 12, 2024, from Amazon.com; the Supplements were shipped to her residence in Maryland. Plaintiff viewed the front and back label of Defendant's Magnesium Supplements when she purchased the product.

6. Defendant Hard Eight Nutrition LLC d/b/a BulkSupplements.com ("Bulk" or "Defendant") is a Nevada limited liability company with a principal place of business at 7511 Eastgate Road, Henderson, Nevada 89011-4058. Bulk markets, advertises, distributes and sells a magnesium nutritional supplement product throughout the United States, including Maryland.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005: (1) during the Class Period Bulk sold its Magnesium Supplements to more than 100 people, (2) in the same period those sales, combined with Plaintiff's requested injunctive relief, punitive damages and attorneys' fees, exceeds

$5,000,000, and (iii) there is minimal diversity because Plaintiff and Class Members and Defendant are citizens of different states.

8. Venue is proper in this district and this Court has specific jurisdiction over Bulk because Plaintiff resides in this District and purchased Bulk's product at issue in this case from within this District.

## FACTUAL ALLEGATIONS

### a. *Defendant misrepresents that one serving of the Magnesium Supplement contains 400 mg of magnesium derived from magnesium glycinate*

9. The amount and type of magnesium, as well as the number of servings, contained within Defendant's Magnesium Supplements are material to any consumer seeking to purchase a magnesium supplement.

10. Defendant purports to sell its Magnesium Supplements in the form of magnesium glycinate powder, which is known as a highly absorbable form of magnesium.

11. Bulk's website advertises that "Magnesium Glycinate is a highly bioavailable form of magnesium, allowing for better absorption and utilization by the body compared to other forms."[1] It further claims that Magnesium Glycinate provides "Muscle Relaxation," "Stress Relief," "Bone Health," and "Mood Support."[2]

12. Bulk labels and advertises its Magnesium Supplements in a manner that highlights the amount of magnesium as magnesium glycinate contained within each serving, as well as the number of servings provided. As set forth in the below images, Bulk prominently displays that the Supplements contain Magnesium Glycinate and that one serving of 2,200 mg of powder

[1] https://www.bulksupplements.com/products/magnesium-glycinate-powder (last visited May 22, 2025).

[2] *Id.*

contains 400 mg of “Magnesium (as Magnesium Glycinate).” It states that there are no other ingredients other than “Magnesium (as Magnesium Glycinate)” (“Other Ingredients: None”). It also highlights the number of 2,200 mg servings contained within the product (*e.g.,* 113 servings in its 250 gram product). Such representations constitute an express warranty regarding the Magnesium Supplements’ magnesium content. Below is an image of the label on the product that Plaintiff purchased:



13. During the Class Period Bulk sold its Magnesium Supplement in 100 gram, 250 gram, 500 gram, 1 kilogram, 5 kilogram and 25 kilogram packages. The labels for each Supplement product uniformly claimed that one serving of 2,200 milligrams of the Supplement provides 400 mg of Magnesium (as Magnesium Glycinate) and note the number of 2,200 milligram servings provided.[3]

14. Upon information and belief, Bulk labeled its Magnesium Supplement in a materially identical manner throughout the Class Period, stating that one 2,200 mg serving of the Supplement contains 400 mg of magnesium as magnesium glycinate.

15. The U.S. Department of Health & Human Services directs that "[t]he Supplement Facts panel on a dietary supplement label declares the amount of elemental magnesium in the product, not the weight of the entire magnesium-containing compound." *See* https://ods.od.nih.gov/factsheets/Magnesium-HealthProfessional/) (last visited May 22, 2025). Here, the Supplement Facts note that one serving of 2,200 mg of the Supplement contains "400 mg" of "Magnesium (as Magnesium Glycinate)."

16. During the Class Period the Supplement Facts also noted that the listed 400 mg of magnesium derived from magnesium glycinate constitutes 95% of the recommended Daily Value of magnesium. Under 21 C.F.R. § 101.9(c)(8), addressing "[t]he requirements related to including a statement of the amount per serving of vitamins and minerals," "[t]he quantitative amounts of vitamins and minerals, excluding sodium, shall be the amount of the vitamin or mineral included in one serving of the product, using the units of measurement and the levels of significance given in paragraph (c)(8)(iv) of this section." 21 C.F.R. § 101.9(c)(8)(iii). With respect to magnesium,

---

[3] https://www.bulksupplements.com/products/magnesium-glycinate-powder?variant=32133429100655 (last visited April 3, 2024).

the recommended Daily Value for adults and children over four years is 400 milligrams (mg) of magnesium. 21 C.F.R. § 101.9(c)(8) (iv). 95% of 400 milligrams is 399 milligrams.

***b. It is impossible for 2,200 mg of the Magnesium Supplement to contain 400 mg of magnesium as magnesium glycinate***

17. Defendant's representations were false and misleading.

18. It is impossible for one 2,200 mg serving of Defendant's Magnesium Supplement to contain the advertised and warranted 400 mg of magnesium as magnesium glycinate in light of the amount of magnesium contained in magnesium glycinate.

19. Magnesium glycinate contains only 14.1% magnesium by mass.[4] Accordingly, approximately 2,830 mg of magnesium glycinate is needed to obtain 400 mg of magnesium.

20. In light of the foregoing, Defendant's representations that one serving of 2,200 mg of the Magnesium Supplements contains 400 mg of magnesium as magnesium glycinate is impossible and false.

21. Instead, the Supplements either (1) contained less magnesium as magnesium glycinate than advertised and/or (2) contained magnesium from undisclosed sources other than the warranted and advertised magnesium glycinate such as magnesium oxide.

22. For instance, if the magnesium provided by the Supplements only comes from magnesium glycinate, then one 2,200 mg serving only provides 310 mg of magnesium (as magnesium glycinate), 22.5% less than the advertised and warranted 400 mg. Additionally, in this scenario the number of servings providing 400 mg of magnesium as magnesium glycinate is less than advertised. Thus, for Bulk's 250 gram product, there are 88 servings of 400 mg of magnesium as magnesium glycinate, not the 113 servings that Bulk advertises and warrants.[5]

---

[4] *See, e.g.,* https://en.wikipedia.org/wiki/Magnesium_glycinate (last visited May 22, 2025).

[5] 250 grams = 250,000 milligrams

23. In the alternative, the magnesium in the Supplement may be derived from other sources of magnesium, such as magnesium oxide, which contains a higher percentage of elemental magnesium than magnesium glycinate but which is less desirable to consumers because, *inter alia*, it is not absorbed by the body as well as magnesium glycinate and therefore is less desirable to those consumers who seek to raise their magnesium levels.

24. The above misrepresentations regarding the contents and ingredients of Defendant's Magnesium Supplements are unlawful under both state and federal law. The Federal Food, Drug, and Cosmetic Act ("FDCA'), passed by Congress in 1938, grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A). In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act ("NLEA"), which sought to clarify and strengthen the FDA's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods. 21 U.S.C. §§ 343, et seq.

25. Bulk's false and deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular." Federal regulations also dictate the manner in which Defendant must label its product and the methods it must use to determine the magnesium contents of its product. Defendant failed to ensure the accuracy of its Magnesium Supplements' labels in accordance with these federal regulations.

26. Maryland prohibits the misbranding of food in a way that parallels the FDCA; it provides that "[a] food is misbranded" if, *inter alia,* its "labeling or packaging is false or misleading

---

2,836 milligrams of magnesium glycinate = 400 mg of magnesium

250,000 / 2,830 = 88

in any way." Md. Code Ann., Health-Gen. § 21-210(b)(1).

27. Bulk's representations during the Class Period regarding the magnesium contents of its Magnesium Supplement – including its representation that there are 400 mg of magnesium derived from magnesium glycinate in one 2,000 mg serving – are material. Reasonable consumers of magnesium supplements base their purchasing decisions on the advertised and warranted amount of magnesium contained therein and the source from which such magnesium is derived. Consumers specifically prize magnesium derived from magnesium glycinate over other sources of magnesium because of its "high absorption," as Defendant claims. Additionally, consumers reasonably rely on Defendant's label to accurately determine the identity, amount and source of any dietary ingredients included within the Defendant's Magnesium Supplements. Accordingly, Plaintiff and Class Members, as reasonable consumers, were materially misled by Defendant's representations regarding the true nature and composition of the Magnesium Supplements' magnesium contents.

28. Further, such misrepresentations also breach Defendant's express warranty that each serving of the Magnesium Supplement contains magnesium "as magnesium glycinate" in the amount listed on its label (400mg).

29. The difference between the Magnesium Supplements promised and the products sold is significant and material because the sold products do not contain 400 mg of magnesium derived from magnesium glycinate per serving. The amount and source of actual magnesium provided, and the measure of magnesium per serving, has real impacts on the benefits provided to consumers by the Magnesium Supplements and the actual value of the Supplements. Persons requiring a certain amount of magnesium supplementation – whether for "Muscle Relaxation," "Stress Relief," "Bone Health," and "Mood Support" as Bulk claims – are left to ingest less

magnesium as magnesium glycinate than Defendant states will be provided and/or are left to ingest magnesium that is derived from sources of magnesium that are inferior and less desirable than the magnesium glycinate promised by the Defendant.

30. Because Plaintiff and Class Members purchased a product that contains less magnesium as magnesium glycinate than advertised and warranted, Plaintiff and Class Members have suffered an injury-in-fact. Misbranded nutritional supplements cannot legally be manufactured, held, advertised, distributed or sold. Thus, misbranded nutritional supplements have no economic value and are worthless as a matter of law, and purchasers of misbranded nutritional supplements are entitled to a restitution refund of the purchase price of the misbranded nutritional supplements. Additionally, had Plaintiff and Class Members known the true nature and composition of the magnesium content of the Magnesium Supplements, they would not have purchased such Products, or would have only paid for the magnesium as magnesium glycinate actually delivered with the Supplements.

31. On March 18, 2025, prior to initiating this action, Plaintiff's counsel sent a demand letter to Bulk on behalf of Plaintiff. The letter, *inter alia,* (1) alleged that Bulk mislabels and falsely misrepresents the contents of its Magnesium Supplements and the Supplements contain less magnesium as magnesium glycinate than advertised in light of the amount of magnesium in magnesium glycinate; (2) alleged that Bulk breached its written and implied warranties and violated, *inter alia,* the Maryland Consumer Protection Act and the Magnuson-Moss Warranty Act; (3) alleged that Plaintiff and similarly situated consumers had been harmed and injured because they were misled into purchasing Bulk's Magnesium Supplements and would have paid significantly less for or not purchased the supplements had they known about the true magnesium content of the supplements; and (4) demanded that "Bulk immediately cease

the above unlawful practices, cease mislabeling and misbranding Bulk's Magnesium Glycinate supplements," demanded that it provide Plaintiff "and all others situated full restitution, damages and punitive damages to the fullest extent permitted by law."

***c. After a California consumer sued Defendant about the Supplements' false labels, Defendant changed its labels, acknowledging previously undisclosed magnesium oxide***

32. On April 17, 2024 – after Plaintiff purchased the Supplements from Amazon in February 12, 2024 – a California consumer sued Defendant concerning the mislabeled Magnesium Supplements. *Miran v. Hard Eight Nutrition LLC d/b/a BulkSupplements.com*, No. 5:24-cv-00807-SSS-SHK (C.D. Cal.).[6]

33. Thereafter, Defendant changed the back label on its Supplements to belatedly disclose for the first time that the Supplements (1) contain magnesium from magnesium oxide in addition to magnesium glycinate and (2) there is less magnesium per serving than Defendant originally claimed on the labels. The labels now claim 300 mg of "Magnesium (as Magnesium Glycinate and Magnesium Oxide) per serving rather than 400 mg of "Magnesium (as Magnesium Glycinate)" as previously claimed:[7]

[6] The plaintiff in *Miran* is also represented by Lemberg Law.

[7] *See* https://www.bulksupplements.com/products/magnesium-glycinate-powder (last visited May 22, 2025).




34. However, Defendant continues to label the product as "Magnesium Glycinate Powder" on the front label without disclosing the existence of magnesium oxide.

35. Repeat consumers who viewed the Supplements' altered labels immediately noted the change and registered their displeasure. *E.g.*:

- "Didn't expect it to contain an unspecified proportion of Magnesium Oxide, which is basically a junk filler that is cheap, boosts the Magnesium content, but is not well absorbed in digestion." (Amazon; Dec. 25, 2024);[8]

[8] https://www.amazon.com/BulkSupplements-Magnesium-Glycinate-Powder-grams/dp/B00F7OZJQE?th=1 (last visited Jan. 13, 2025)

- "I wish I would have noticed that this is cut with magnesium oxide before purchasing. It is not listed in the title. As far as I'm concerned this is false advertising. Up until now I have been pleased with all products I've purchased from Bulk Supplements. Not anymore. Magnesium oxide will cause diarrhea which makes this supplement unusable in the quantities I need. I am super disappointed in Bulk Supplements and it makes me question the quality of their other products that I bought from them. I'll definitely think twice before purchasing from them again." (Amazon; Dec. 21, 2024);

- "Misleading labeling. Be aware . . . This magnesium is a mix of two: glycinate which is the best and oxide which is the worst. Buyer beware! Just a thought." (Amazon; Nov. 28, 2024);

- "Bulk Supplements has taken a good product (pure Magnesium Glycinate) and mixed it with Magnesium Oxide which is junk. Mag Glycinate has a bioavailability/absorption of 96%; Magnesium Oxide is one of the least bioavailable forms with absorption of 4%. This mix does not get you the elemental magnesium content that is indicated on the label. My wife has been using pure Magnesium Glycinate for years because of its high bioavailabilty to support her with various issues (muscular/neuro). She started having muscle spasms and sleep issues which is how I was able to identify the change to their formulation.

  Both Amazon's description page and Bulk Supplements website refer to Magnesium Glycinate and its benefits, but do not include any mention of the

Magnesium Oxide except in the image/photo of the nutrition panel. THIS IS MISLEADING!

I've tried contacting Bulk Supplements; their website says there is a Customer Service phone support, but no phone number is listed anywhere. I WANT A REFUND FOR THIS JUNK!" (Amazon; Nov. 14, 2024);

- "Didn't realize this has magnesium oxide. This is the cheapest worst type of magnesium. What a scam! Not recommended." (Amazon; Nov. 5, 2024).

36. Notably, some of these reviewers are repeat purchasers who believed the prior falsehood and are upset because they think Bulk changed the formula for the Supplements. In truth, Bulk just changed the product's back label and was selling these consumers the "junk filler," "worst type of magnesium" (magnesium oxide) for years and just lying about it.

## CLASS ACTION ALLEGATIONS

### A. The Class

37. Plaintiff brings this action on her own behalf and on behalf of the following Class of persons pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) an/or 23(c)(5):

> **Maryland Class**: All persons who purchased Defendant's Magnesium Supplements in Maryland during the four year period preceding the filing of the complaint.

38. Any legal entity, Defendant and its employees or agents are excluded from the Class.

### B. Numerosity

39. Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, Plaintiff believes, and on that basis alleges, that Bulk has sold its

Magnesium Supplements to thousands of Maryland consumers during the Class Period and therefore there are thousands of members of each of the Class.

**C. Common Questions of Law and Fact**

40. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. These questions include:

a. Whether Defendant labels, markets and otherwise advertises its Magnesium Supplements in a deceptive, false, or misleading manner by misstating the product's magnesium content;

b. Whether Defendant's sale of the Magnesium Supplements constitutes unfair methods of competition and unfair or deceptive acts or practices in violation of, *inter alia*, the Maryland Consumer Protection Act, including: whether Defendant misrepresents the source, sponsorship, approval, or certification of their Magnesium Supplements; whether Defendant represents that the Magnesium Supplements are of a particular standard or quality if it is of another; and whether Defendant advertises its Magnesium Supplements with intent not to sell them as advertised;

c. Whether Defendant's sale of the Magnesium Supplements constitutes a breach of warranty;

d. Whether Defendant concealed material facts concerning the Magnesium Supplements;

e. Whether Defendant engaged in unconscionable commercial practices in failing to disclose material information concerning the Magnesium Supplements;

f. The nature and extent of damages, restitution, equitable remedies, and other relief

to which Plaintiff and the Class are entitled; and

g. Whether Plaintiff and the Class should be awarded attorneys' fees and the costs of suit.

**D. <u>Typicality</u>**

41. The Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased the Magnesium Supplements within the last four years, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained economic injuries arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

**E. <u>Protecting the Interests of the Class Members</u>**

42. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor her counsel has any interest which might cause them not to vigorously pursue this action.

**F. <u>Proceeding Via Class Action is Superior and Advisable</u>**

43. A class action is the superior method for the fair and efficient adjudication of this controversy. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the

complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.

44. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Fraudulent Concealment**
**(Plaintiff on behalf of the Maryland Class)**

45. Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

46. By failing to disclose and concealing the contents of the Magnesium Supplements from Plaintiff and Class Members (i.e., the Magnesium Supplements do not include the amount of magnesium derived from magnesium glycinate advertised and warranted), Defendant concealed and suppressed material facts concerning the Magnesium Supplements.

47. Defendant knew or should have known that the Magnesium Supplements did not contain the amount of magnesium as magnesium glycinate advertised and warranted and were not suitable for their intended use.

48. Defendant was under a duty to Plaintiff and Class Members to disclose and/or not misrepresent the contents of the Magnesium Supplements because:

a. Defendant was in a superior position to know the true state of facts about the magnesium contents of Defendant's Magnesium Supplements, including the type of magnesium Defendant included in the Supplements;

b. Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Magnesium Supplements do not contain the amount of magnesium

as magnesium glycinate advertised and warranted; and,

c. Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn about or discover the true magnesium contents of Defendant's Magnesium Supplements.

49. On information and belief, Defendant still has not made full and adequate disclosures, and continues to defraud consumers by concealing material information regarding the contents of the Magnesium Supplements.

50. The facts concealed or not disclosed by Defendant to Plaintiff and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Magnesium Supplements.

51. Plaintiff and the Class relied on Defendant to disclose material information it knew, such as the defective nature and contents of the Magnesium Supplements, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

52. By failing to disclose the true contents of the Magnesium Supplements, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

53. Had Plaintiff and other Class Members known that Magnesium Supplements did not contain the amount of advertised and warranted magnesium as magnesium glycinate, they would not have purchased the Magnesium Supplements or would have paid less for them.

54. As a result of Defendant's misconduct, Plaintiff and the other Class Members have been harmed and have been injured.

55. Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

56. Defendant's actions and omissions were done maliciously, oppressively,

deliberately, with intent to defraud, and in reckless disregard of Plaintiff' and the Class's rights and well-being, to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

57. Furthermore, as the intended and expected result of its fraud and conscious wrongdoing, Defendant has profited and benefited from Plaintiff's and Class Members' purchases of falsely advertised and misbranded Magnesium Supplements. Defendant has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendant's misconduct alleged herein, Plaintiff and Class Members were not receiving magnesium supplements of the quality, nature, fitness, or value that had been represented by Defendant, and that a reasonable consumer would expect.

58. Defendant has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of the Magnesium Supplements and by withholding benefits from Plaintiff and Class Members at the expense of these parties. Equity and good conscience militate against permitting Defendant to retain these profits and benefits, and Defendant should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment**
**(Plaintiff on behalf of the Maryland Class)**

59. Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

60. As a result of Defendant's fraudulent acts, and omissions related to the magnesium contents of the Supplement, Defendant obtained monies which rightfully belong to Plaintiff, and

the Class Members to the detriment of Plaintiff and Class Members.

61. Defendant appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and the proposed Class Members who, without knowledge of the true contents of the Supplements, paid a higher price for Supplements, which actually had lower values. Defendant also received monies for Supplements that Plaintiff and the Class Members would not have otherwise purchased or leased.

62. It would be inequitable and unjust for Defendant to retain these wrongfully obtained profits.

63. Defendant's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

64. As a result of Defendant's unjust enrichment, Plaintiff and Class Members have suffered damages.

65. Plaintiff does not seek restitution under his Unjust Enrichment claim. Rather, Plaintiff and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

66. Additionally, Plaintiff and Class Members seek injunctive relief enjoining Defendant from further deceptive distribution and sales practices with respect to the Supplement, enjoining Defendant from selling the Supplement with misleading information concerning the Supplement's true magnesium content and source. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

## THIRD CAUSE OF ACTION

**Breach of Express Warranty Pursuant to Md. Code Ann., Com. Law § 2-313**
**(Plaintiff on behalf of the Maryland Class)**

67. Plaintiff hereby incorporates by reference the allegations contained in the preceding

paragraphs of this Complaint.

68. Plaintiff and each member of the Class formed a contract with Defendant at the time Plaintiff and the other members of the Class purchased one or more of Defendant's Magnesium Supplements. The terms of that contract include the promises and affirmations of fact made by Defendant on the packaging of the Magnesium Supplements regarding the products' magnesium content, and specifically that the product contains 400mg of magnesium as magnesium glycinate per each 2,200 mg serving.

69. The Magnesium Supplements' packaging constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other.

70. All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

71. Defendant breached the terms of this contract, including the express warranties, with Plaintiff and the Class by not providing the products that could provide the benefits promised, i.e. that the Supplements contain the warranted amount of magnesium as magnesium glycinate as alleged above.

72. As a result of Defendant's breach of its contract, Plaintiff and the Class have been damaged in the amount of the different purchase price of any and all of the Magnesium Supplements they purchased and the price of a product which provides the benefits and contents as warranted.

**FOURTH CAUSE OF ACTION**
**Violation of the Maryland Consumer Protection Act**
**(Plaintiff on behalf of the Maryland Class)**

73. Plaintiff hereby incorporates by reference the allegations contained in the

preceding paragraphs of this Complaint.

74. The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good. Md. Com. Law Code § 13-303. Defendant participated in misleading, false, or deceptive acts that violated the Maryland CPA.

75. Defendant and Plaintiff are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

76. Defendant's conduct, as set forth above, occurred in the conduct of trade or commerce.

77. In the course of Defendant's business, Defendant willfully failed to disclose, actively concealed the true contents of the Magnesium Supplements. Accordingly, Defendant engaged in unfair and deceptive trade practices, unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. Defendant's acts had the capacity, tendency or effect of deceiving or misleading consumers; failed to state a material fact that deceives or tends to deceive; and constitute deception, fraud, false pretense, false promise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection therewith.

78. In purchasing of the Magnesium Supplements, Plaintiff and the other Class members were deceived by Defendant's failure to disclose and microrotations concerning the Supplements' magnesium content

79. Plaintiff and Class members reasonably relied upon Defendant's misrepresentations and had no way of knowing that said representations were false and gravely misleading.

80. Defendant's actions as set forth above occurred in the conduct of trade or commerce.

81. Defendant's methods of competition and unfair, deceptive acts were likely to and did in fact deceive reasonable consumers.

82. Defendant intentionally and knowingly misrepresented material facts regarding the Supplements with intent to mislead Plaintiff and the Class.

83. Defendant knew or should have known that its conduct violated this statute.

84. Defendant owed Plaintiff and the Class a duty to disclose the truth regarding the Supplements because Defendant: Possessed superior/exclusive knowledge of the true contents of the Supplements and/or intentionally concealed the Supplements' magnesium \content t from Plaintiff and the Class.

85. Defendant's conduct proximately caused injuries to Plaintiff and the other Class members.

86. Plaintiff and the other class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

87. Defendant's violations present a continuing risk to Plaintiff as well as to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

88. Pursuant to Md. Code Com. Law § 13-408, Plaintiff seeks actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**<u>FIFTH CAUSE OF ACTION</u>**
**Breach of Implied Warranty of Merchantability Pursuant to Md. Code Com. Law § 2-314)**

**(Plaintiff on behalf of the Maryland)**

89. Plaintiff incorporates by reference all allegations contained in this Complaint as though fully stated herein.

90. Defendant is a merchant with respect to the Magnesium Supplements.

91. The Magnesium Supplements were subject to implied warranties of merchantability running from the Defendant to Plaintiff and Class Members.

92. An implied warranty that the Magnesium Supplements were merchantable arose by operation of law as part of the sale of the Magnesium Supplements.

93. Defendant breached the implied warranty of merchantability in that the Magnesium Supplements do not contain the amount of advertised magnesium derived from magnesium glycinate, do not provide the benefits associated with the warranted and advertised 400 mg of magnesium as magnesium glycinate per serving, and thus were not in merchantable condition when Plaintiff and Class Members purchased them, or at any time thereafter, and they were unfit for the ordinary purposes for which such nutritional supplements are used.

94. Defendant has breached the implied warranty of merchantability because the Magnesium Supplements when sold would not pass without objection in the trade.

95. As a result of Defendant's breach of the applicable implied warranties, purchasers of the Magnesium Supplements suffered an ascertainable loss, were harmed, and suffered actual damages.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

a. An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

b. An order awarding Plaintiff and class members their actual damages, incidental and consequential damages, punitive damages, statutory damages and/or other form of monetary relief provided by law;

c. An order awarding Plaintiff and the class restitution, disgorgement, or other equitable relief as the Court deems proper;

d. An order enjoining Defendant from continuing to engage in the unlawful and unfair business acts and practices as alleged herein;

e. Reasonable attorneys' fees and costs;

f. Pre-judgment and post-judgment interest, as provided by law;

g. Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: May 23, 2025

Respectfully submitted,

By /s/ Sergei Lemberg

Sergei Lemberg, Esq.
LEMBERG LAW, L.L.C.
43 Danbury Road, 3rd Floor
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile: (203) 653-3424
ATTORNEYS FOR PLAINTIFF